## Case No. 1,944.

BROOKS et al. v. BICKNELL et al.

[3 McLean, 250;[1] 1 West. Law J. 150; 2 Robb, Pat. Cas. 118.]

Circuit Court, D. Ohio. Oct. 31, 1843.

INJUNCTION—PLEADING—ANSWER — PROCEDURE—PATENTS—REISSUE TO ADMINISTRATOR — APPLICATION AND ISSUE — SPECIFICATION — INFRINGEMENT—TRIAL BY JURY— IDENTITY OF PATENTED MACHINE—ACTION BY ASSIGNEE—PARTIES.

1. An answer to an injunction bill, though filed without a rule, will be treated as an answer, on a motion to grant, or continue, an injunction. Affidavits may be read, on both sides, as to facts unconnected with the title.

    [Cited in Washburn v. Gould, Case No. 17,-214. Cited, but not followed, in Farmer v. Calvert Lithographing, etc., Co., Id. 4,-651.]

2. If a patentee be dead, his administrator may renew the patent.

    [Cited in Woodworth v. Sherman, Case No. 18,019; Wilson v. Rousseau, Id. 17,832. Cited, but not followed, in Goodyear v. Providence Rubber Co., Id. 5,583; Rumford Chemical Works v. Hecker, Id. 12,133.]

3. The board on whose judgment a renewal is granted, may be said to act judicially. Their judgment is not conclusive as to the right; but of certain facts, it must be considered conclusive.

    [Cited in Washburn v. Gould, Case No. 17,-214; Wilson v. Rousseau, Id. 17,832.]

4. The specifications of an improvement of a machine, must be so clear as to enable a person acquainted with the structure of such a machine, to build one. In such description it is sufficient to refer generally to the machine improved, without giving a particular description of it. It is not material, in the description, to say, whether certain parts of the machine should be made of wood or metal.

    [Cited in Washburn v. Gould, Case No. 17,-214; Emerson v. Hogg, Id. 4,440.]

5. Where witnesses differ on the fact of an infringement, the matter should be submitted to a jury, either by an action at law, or an issue directed by chancery.

6. A difference in form, or proportions only, makes no difference in the principles of the machines. If they operate on the same principle, in the application of the power, in law, the machines are considered identical.

7. A patent is invalid, if the thing claimed to have been invented, has been made in a foreign country, or described in some public work. But in this, as on the fact of infringement, the

[1] [Reported by Hon. John McLean, Circuit Justice.]

machine, or thing invented, must in principle, be the same.

8. The assignee of a patent right, in part, can, in law, or equity, sustain a suit, for a violation of the patent, without uniting the name of the patentee.

[Cited in Wilson v. Rousseau, Case No. 17,- 832.]

[9. Cited in Wilson v. Rousseau, 4 How. (45 U. S.) 646, to the point that, unless the assignment gave to the assignee the right in the extended or renewed patent, his interest expired with the limitation of the original patent.]

[10. Cited in Goodyear Dental Vul. Co. v. Willis, Case No. 5,603, to the point that the several circuit courts of the United States are bound by the decisions of each other.]

[Cited in Wells v. Oregon Ry. & Nav. Co., 15 Fed. 570.]

[In equity. Bill by Moses Brooks and Joseph L. Morris against Benjamin Bicknell and Ebenezer Jenkins to enjoin infringement of a patent for an improvement in wood-working machines, granted to William Woodworth, December 27, 1828, and extended to his administrator February 16, 1842, and for other relief. The defendants opposing an injunction heretofore granted, the same was dissolved conditionally.]

Wright, Coffin & Miner, for complainants. Mr. Walker, for defendants.

Before McLEAN, Circuit Justice.

OPINION OF THE COURT. The complainants represent in their bill, that on or about the 4th of December, 1828, William Woodworth, now deceased, was the inventor of a certain improvement, or machine, for planing, grooving, and tongueing boards, and other materials, and for which, having complied with every legal requisite, he obtained a patent, dated the 27th of December, 1828, to him, his heirs, executors, administrators, or assigns, for the term of fourteen years. That the patent, after the 15th day of December, 1836, was duly recorded anew, in the patent office, as required by law. That the patentee having departed this life on the 14th day of February, 1839, letters of administration were granted on his estate, by the surrogate of the county of New-York, to William W. Woodworth. That afterwards he presented to the proper department of the government. a petition for an extension of the patent, and having in all things complied with the law, on the 16th day of November, 1842, a renewal and extension of the patent, for seven years, were granted. That during the original patent, the patentee assigned one half of his interest in the same, to James Strong, and afterwards, on the 29th day of July, 1830, Strong and Woodworth, by deed, transferred to Isaac Collins and Barzillai C. Smith, all their right under the patent, in the state of Ohio, and other territory therein named; and on the 12th day of April, 1831, Collins and Smith conveyed to Lewis Sanders the exclusive right to make, construct, use, and vend, one hundred machines, above patented, for the coun-

ty of Hamilton, Ohio, as well as other territory. That said Sanders, on the 18th of August, 1831, transferred to Thomas D. Carneal and Charles Neave, one equal undivided half of his right. That Carneal and Neave, on the 9th of July, 1834, transferred all their interest in the patent to the complainants; and on the same day Sanders conveyed to them all his interest. That all the above assignments have been duly recorded in the patent office, except the assignment to Sanders, which has been lost, or mislaid. That on the 2d of January, 1843, Collins and Smith transferred to William W. Woodworth their interest in the renewal of the patent, which has been duly recorded. That Woodworth, while in possession of the right, on the 2d of January, 1843, executed a certain instrument of disclaimer, as to the exclusive right, or interest, in circular saws for reducing floor planks, or other materials, to the same width, which was also recorded. That afterwards Woodworth assigned his interest in the renewed patent, for the county of Hamilton and other territory specified, to Wilson, and Wilson assigned the same to the complainants, which assignments are of record. That the complainants have been in the use of their right, which was well known to the defendants, but that in disregard of such right, defendants are making or causing to be made, setting up, and about to put in operation, in the city of Cincinnati, one or more machines, for planing boards and other materials, or have made, set up, and put in operation, such machines, in said city; which machines, and all the material parts thereof, are substantially like, and upon the plan of Woodworth's. And they represent that defendants have little or no property, and in a pecuniary point of view are wholly irresponsible. An injunction is therefore prayed, &c.

The answer admits the emanation of the patent, the death of the patentee, the appointment of administrator, the several assignments, with some exceptions, and the disclaimer of the administrator—denies that the defendants are not pecuniarily responsible—admits the possession and use, under the patent, of a certain machine, but denies that it is the machine patented, and points out six substantial differences—denies that the invention was Woodworth's, and points out similar machines, used and patented before—denies the validity of the patent, on account of defects in the specifications, and points out seven—denies the validity of the renewal to the administrator—admits the construction of the machine, by the defendants, and gives specifications and drawings; but denies that it is an infringement, and points out what is claimed as new.

On the hearing plaintiffs insisted, that the answer was nothing more than an affidavit, until time for answering expired; and cited 1 Cond. Eng. Ch. 66; 1 Smith, Ch. Pr. 595.

Defendants objected to the reading of affi-

davits. Plaintiffs cited 3 P. Wms. 255; 3 Mer. 622; 1 Ves. 427; Baldw. 206 [Bonaparte v. Camden & A. R. Co., Case No. 1,617].

As to the practice in granting injunctions, plaintiffs insisted, that though there might be doubts about the validity of the patent, if there had been an exclusive use for a length of time, the injunction would be granted. 6 Ves. 707; Phil. Pat. 461; 4 Wash. C. C. 534 [U. S. v. Ortega, Case No. 15,971]; 9 Johns. 470; 3 Mer. 622; 1 Madd. Ch. Pr. 113; 14 Ves. 131. Defendants admitted this to be the law; but denied any use of the machine patented, insisting that it was substantially different.

Defendants for the present admitted plaintiffs' title as set out: but opposed the injunction on three grounds: 1. The patent is invalid for defects in the specifications; there are no written references to drawings, as required by law; and the description is too general and ambiguous to enable a practical machinist to construct a machine. 2 McLean, 37 [Stanley v. Whipple, Case No. 3,286]. This question is a matter for the court. 2 Brock. 298 [Davis v. Palmer, Case No. 3,645]. But the affidavits of men of skill may assist.

2. The administrator cannot renew, but only the patentee. Act 1836 [5 Stat. 124], § 18. Where the right is to extend to representatives and assigns, it is specially provided for, as in sections 5, 10, 13, and the latter part of 18. The design is to reward the inventor, and not speculators. Plaintiffs cited Van Hook v. Scudder [Case No. 16,853], and also claimed that the opinion of the board was entitled to weight.

3. There was no infringement. Plaintiffs claimed a particular application, or combination, of known principles. Defendants had made a different one—cited 1 Pet. C. C. 398 [Gray v. James, Case No. 5,718]; 4 Wash. C. C. 706 [Treadwell v. Bladen, Case No. 14,154]; 2 Kent, Comm. 370; [Evans v. Eaton] 7 Wheat. [20 U. S.] 361,—to show what amounts to an infringement.

Two preliminary points are made, which it may be proper to settle, before the main questions are considered. 1. The effect of the answer. As it has been voluntarily and prematurely filed, it is contended, it can have no other effect than the affidavit of the defendants, in regard to the motion now made. It is true there has been no rule for answer, but this seems to be no satisfactory reason why it should not be treated as an answer. The complainants call upon the defendants to answer, and, on many points, the answer is responsive to the bill. By the fortieth rule of practice, "a defendant is not bound to answer any statement or charge in the bill, unless specially and particularly interrogated thereto." And the same rule declares, that if "a defendant shall answer any statement or charge in the bill, to which he is not interrogated, only by stating his ignorance of the matter so stated or charged, such answer shall be deemed impertinent."

From this rule it is clear that the defendant is in no default, by refusing to answer any part of the bill to which he is not specially interrogated. And if he expresses "ignorance of the matter, his answer shall be deemed impertinent;" but the rule does not say that if the answer respond to the charges in the bill, it shall be held impertinent.

By the fifth section of the act of the 2d of March, 1793 [1 Stat. 335], it is declared, that "no writ of injunction shall be granted in any case, without reasonable previous notice to the adverse party, or his attorney, of the time of moving for the same." And by the fifty-fifth rule it is declared, that "special injunctions shall be grantable only upon due notice to the other party, by the court in term, or by a judge thereof in vacation, after a hearing, which may be ex parte, if the adverse party does not appear at the time and place ordered." Both from the statute, and the rule of practice, it is clear, a hearing of both parties is contemplated on an application for an injunction. And there can be no objection, it would seem to me, if time be given, to an answer of the allegations in the bill.

2. An objection is made to the affidavits offered in support of the bill, and in contradiction of the answer. That affidavits are read to support the injunction, on a motion to dissolve it, on the coming in of the answer, is a well established rule in England. Gibbs v. Cole, 3 P. Wms. 255; 2 Eq. Cas. Abr. p. 14, pl. 2; Isaac v. Hampage, 3 Brown, Ch. 463; 1 Ves. Jr. 427. In Morphett v. Jones, 19 Ves. 350, it is said, "there are many cases of injunction where you may reply to the answer by affidavits, not on the question of title, but on mere facts, as in the instance of waste, on such questions of fact though not on the title, affidavits in reply to the answer may be read." It is said in 1 Smith, Ch. Pr. 595, that "if the plaintiff, instead of applying for the injunction upon affidavit, waits until the defendant has answered, he must rest his case upon the disclosures made by the answer, and he is not entitled, either for the purpose of obtaining or continuing an injunction, to read any affidavits in support of his motion, in opposition to the answer." But cases of waste, or of mischief analogous to waste, are an exception to this rule, where the affidavits do not refer to title. The illegality of the extension of the patent, is the principal ground of objection to the complainants' right.

The eighteenth section of the patent law of July the 4th, 1836 [5 Stat. 124], provides, "that whenever any patentee of an invention or discovery, shall desire an extension of his patent, he may make application therefor, in writing, to the commissioner of the patent office," &c. The secretary of state, the commissioner of the patent office, and the solicitor of the treasury, constitute a board to determine on the right

of the applicant to an extension; and if their judgment shall be in his favor, the patent is extended seven years beyond the original grant of fourteen years. This privilege, or right, it is contended, is given to the patentee, and to no other person. And that as the above extension was granted, after the decease of the patentee, and to his administrator, it was unauthorised, and is consequently void. [The above section names only the patentee, in providing the mode of application for the extension of a patent; but it declares that "the benefit of such renewal shall extend to assigns and grantees of the right to use the thing patented, to the extent of their respective interests therein." From which it would seem that the extension of the patent was designed for the benefit of the assignee, as well as the patentee. And if the whole right has been assigned, in the language of the act, the renewal of the patent goes to the assignee, "to the full extent of his right." Seeing then, that in certain cases the whole benefit of the renewal of the patent enures to the assignee, it might become a question, whether, in a case where the entire right had been assigned, the renewal might be made on the application of the assignee. This would give effect to the intention of the legislature. And in a case like this, substance is regarded more than mere matter of form.][2]

To William W. Woodworth, the administrator of the patentee, Collins and Smith, on the 2d of January, 1843, transferred all their interest in the renewal of the patent. So that in fact when the administrator applied for a renewal of the patent, he held, as assignee, an interest in it. But the application for a renewal was made by Woodworth in his capacity as administrator of the patentee, and on that ground the question must be considered. There is no express statutory provision, authorising the administrator of the patentee to apply for a renewal of the patent. By the tenth section of the above act, it is provided, that when the inventor or discoverer dies before a patent is obtained, his executor or administrator shall have the right to apply for and obtain the patent, in trust, for the heirs or devisees of the deceased. And in the thirteenth section, where the specification has claimed more than the patentee has invented, and he is dead, his executor, administrator or assignee, has a right to surrender the patent, and have the specification corrected.

To entitle a patentee to an extension of his patent, he must make application in writing to the commissioner of the patent office, setting forth the grounds thereof, "and, on the applicant's paying forty dollars, the commissioner causes a notice to be published in one or more of the principal newspapers in the city of Washington," &c. stating "the time and place where the same will be considered, that any person may appear and show cause why the extension should not be granted." And the board, constituted for this purpose, are required to meet at the time and place specified; before whom the applicant is required to state under oath, the value of the invention, and of his receipts and expenditures, sufficiently in detail to exhibit a true and faithful account of loss and profit in any manner accruing to him from and by reason of said invention." "And if upon hearing it shall appear to the entire satisfaction of the board that the term should be extended, by reason of the patentee, without neglect or fault on his part, having failed to obtain, from the use and sale of his invention, a reasonable remuneration for the time, ingenuity and expense bestowed upon the same, and the introduction thereof into use, it shall be the duty of the commissioner to renew the patent, &c. and the judgment of the board shall be entered on record in the patent office," &c. Now this language would seem to limit the right of renewal to the patentee, not only from the use of his name in the first part of the section, but from the object of the grant of renewal, it being "to secure him a reasonable remuneration, for his time, ingenuity and expense." But still, "the benefit of the renewal extends to the assignee of the right, to the extent of his interest." And where the assignment of the whole right has been made by the patentee, it is difficult to perceive how a renewal could operate beneficially to him. There are cases, no doubt, in which the principal expense has been incurred by the assignee, who has constructed and introduced the machine into use.

In the case under consideration, however, the heirs of the patentee, at the time of the renewal, held a principal interest in the patent, and its renewal was for their benefit. It is intimated that the decision of the board, as to the extension of the patent, is conclusive, both as to the right granted, and the mode of granting it. There can be no doubt that where a special tribunal is constituted, with full powers to act in certain cases, its decisions, within the scope of its authority are conclusive, if there be no superior supervising tribunal. And in this case the matter of expense, the payment of the money required, and the notice, are conclusively settled by the decision. But the question of law, as to the right of renewal, by the administrator, is not concluded. The board seem not to have acted inconsiderately in the case. Having met on the day designated in the public notice, they adjourned to the 16th day of November, 1842, when they "heard the evidence produced before them, both for and against the extension of the patent," and they, in the very words of the law granted the extension.

Now, although this decision is not conclusive as to the legal right of the administrator, yet it cannot be wholly disregarded. It

[2] [From 1 West. Law J. 150.]

shows, at least, a practical construction, by the executive branch of the government, that the heirs of the patentee may, through their trustee, procure a renewal of a patent. There is nothing in the spirit or policy of the patent law, against this construction. On the contrary, it is in accordance with the principle and policy of that law. The same reason that would give a renewal to the patentee, would be equally strong in behalf of his heirs. If the term of the original grant had not given an adequate remuneration for "the time, ingenuity, and expense" of the patentee; on every principle of public policy, in the event of his decease, there should be a renewal for the benefit of his heirs. That a man should be secured in the fruits of his ingenuity and labor, is a sound maxim of the common law. And it seems difficult to draw a distinction between the fruits of mental and physical labor. But, it must be admitted, that as the right asserted by the complainants arises under a statute, a substantial compliance with the requisitions of such statute must be shown. This seems to have been done, as regards the renewal of the patent in all the essential requirements of the law. If the law does not, in terms, give the right of extension to the administrator of the patentee, in behalf of his heirs, it recognises the right of an assignee of a patent, on its extension; and in other cases the rights of the administrator and heir of the patentee, are recognised and protected. From the principle of the law, its policy, and every consideration connected with the subject, it would seem that the construction of the act, in this respect, has been rightfully settled by the executive department. In this matter the board may have said to have acted judicially. But this view does not rest alone on the consideration of the policy and principle of the law, but it has been judicially sanctioned by the circuit court of the second circuit. Judge Thompson, it seems, on this very patent, and subsequently to the extension of it, treated it, in granting an injunction, as a valid patent. No new patent was issued to the administrator, but a certificate of the extension of the original patent, in pursuance of the judgment of the board, was recorded. The rights under this patent, before its extension, remain, in every respect, the same, after its extension. The administrator acts as the trustee of the heirs; he represents the deceased. And it would seem to be a convenient and fit mode of securing that remuneration, "for the time, ingenuity, and expense" of the patentee, which is given by law, for the administrator to apply for the renewal of the patent. He can pay the money and make the exhibits required. In this duty he does nothing more than the law requires him to do, in regard to other interests of the deceased. Upon the whole, and for the purposes of this motion, I shall consider the extension of the patent, as having been legally granted. It is argued that the specifications in this patent, are essentially defective. If this be so, the right asserted by the complainants must fail.

The specifications must contain reasonable certainty. They must so describe the parts of a machine as to enable a person, skilled in the construction of machines, to build one. And if the patent be for an improvement, the improvement must be described with the same precision. This description need not be so clear as to be understood by an individual wholly unskilled in the structure of machines. On the 2d day of January, 1843, the administrator disclaimed "all and any exclusive right, title, property, or interest, of, in or to the application of circular saws for reducing floor plank, or other materials, to a width," &c. as stated in the specifications. To a person unacquainted with the structure and operation of machinery, the specifications which constitute a part of the above patent, may not be easily and correctly understood. But taking them in connection with the drawing by which they were accompanied, if the affidavits of intelligent machinists can be relied on, they describe the machine so as to enable a skillful mechanic to construct it. It is true that several affidavits were presented by the defendants, of persons who think the specifications are defective. Some of the persons are represented to be mechanics, and well acquainted with the structure of machinery. But the majority are on the side of the plaintiffs. And in addition to this it would seem, that the opinions of several of the affiants, from their opportunities and experience, are entitled to greater weight than some of the defendants' witnesses. Judging, however, from the schedule itself, it seems to contain nothing which an intelligent mind, though but little versed in mechanics, may not fully comprehend. The moving power of the machine, as described in the schedule, in some of its parts is stated in the alternative; but this creates neither doubt nor difficulty. The effect is the same, whether produced by one mode or the other. Nor does the patentee state of what material every part of the machine should be made; but this cannot be material. The principle is the same, whether such part be composed of wood or metal. In Turner v. Winter, 1 Term R. 606, it is said: "The patent and specification should be liberally construed." And in 3 Sumn. 374 [U. S. v. Knight, Case No. 15,539], Mr. Justice Story states it "as a clear rule of law in favor of inventions, and to carry into effect the obvious object of the constitution and law, to give a liberal construction to the language of patents, so as to protect and not destroy the rights of real inventors." The court, he says, "will in all cases adopt that interpretation of a specification which will give the fullest effect to the nature and extent of the claim made by the inventor." In describing the improvement of a machine in use and well known, it is not necessary to

state in detail the structure of the entire and improved machine. It is only necessary to describe the improvement, by showing the parts of which it consists, and the effects which it produces. Such a description in reference to the machine improved is sufficient.

An objection is made, that it does not appear there were written references to the drawings, which accompanied the specifications. The act does provide that the applicant for a patent, "shall accompany the whole with drawings and written references, where the nature of the case admits of drawings," &c. Now unless these references were necessary to an understanding of the improvement, according to the authorities above cited, their omission cannot vitiate the patent. The description of the machine or improvement, accompanied by a drawing, may be, in many cases, perfectly understood without references. It is further contended, that the machine set up by the defendants, does not infringe the patent under which the plaintiffs claim. There is a conflict in the affidavits presented by the parties on this point. The weight of the evidence produced seems to be with the plaintiffs. But as this question will be submitted to a jury, either by an action at law or an issue directed by this court, it may not be proper to express a decided opinion on the subject. It may be proper, however, to remark, that a mere colorable or slight alteration of a machine, or a change in its proportions, gives no ground for a patent; nor can it shelter an individual from the consequences of an infringement. In such cases the inquiry always is, whether the principle of the two machines is the same. If the principle on which the machinery works is the same, and the effect is similar in both, in contemplation of law the machines are identical. A change in the position of the operating powers, or in the thing on which the effect is produced, is of no importance. Such a modification does not rise to the dignity of an invention. There must be an essential difference in the application of the mechanical power, to make the machines dissimilar.

Making, using, or selling a patented machine, is an infringement. Whittemore v. Cutter [Case No. 17,600]; Phil. Pat. 361, 371. Is this a case for an injunction? In most cases the court will not enjoin, until the right of complainant has been established at law. But where the injury would be irreparable, an injunction will be granted. A case of waste constitutes an exception to the general rule, and also the infringement of a patent. This is clearly the English rule, and that is the rule of this court, unless a different one has been adopted. It is insisted that as this is an exception to the general rule in the English chancery, that it is not binding on this court. The rule of the supreme court adopts the mode of proceeding in the high court of chancery in England, in cases where no special rule has been provided. Now the rule applicable in England to suits for waste and on patents, is as applicable here as any other rule. The exception constitutes the rule.

The complainants state that the defendants have little or no property, and could not pay the damages which might be recovered against them for an infringement of the patent. On this ground, as well as on the ground that the complainants' right is clear, an injunction is prayed. For fifteen years, the claimants, under Woodworth's patent, have enjoyed all the rights secured by it. This is an important fact, and it cannot be disregarded in this application. 6 Ves. 707; Phil. Pat. 401; 4 Wash. C. C. 584 [Ogle v. Ege, Case No. 10,462]; Livingston v. Van Ingen, 9 Johns. 570; Id. 585; 1 Madd. Ch. Pr. 113; 14 Ves. 131. The suggestion that the improvement for which Woodworth received a patent, was not an original invention, seems not[2] to be sustained. "If the thing secured by patent had been in use, or had been described in a public work, anterior to the supposed discovery, the patent is void, whether the patentee had a knowledge of the previous use or description or not." Evans v. Eaton [Case No. 4,559]. And this rule holds if the machines are the same in principle, though they may differ in proportions and form. Woodcock v. Parker [Id. 17,971].

In Rees' Encyclopedia, under the head of "Planing Machines," it appears that Bentham obtained a patent in England, for such a machine in 1791; and Bramah, for a different one in 1802. But these machines were in principle, structure, and effect, essentially different from Woodworth's. At least my mind has been brought to this result, from an examination of the evidence before me. [Although the question has not been raised, it may not be improper to suggest, that doubts are entertained whether this suit can be sustained in the names of the complainants alone. They are the assignees of a small part of the patent only, whilst the patentee, who still has a large interest in the patent, is not a party to the suit. In Tyler v. Tuel, 6 Cranch [10 U. S.] 324, the court held, "that an assignee of a patent right, cannot maintain an action on the case for the violation of the patent." In that case the patentee had assigned to the plaintiffs all his interest in the patent, excepting certain counties in the state of Vermont. In Whittemore v. Cutter [Case No. 17,600], the court held that where the patentee has sold out a moiety of his patent right, a joint action lies by himself and his patentee for a violation of it. In Ogle v. Ye [Ogle v. Ege, Case No. 10,462], Judge Washington said "that whether the assignee of a part of a patent, circumscribed as to interest by local limits, can maintain a suit at law in his own name, or united with

---

[2] [2 Robb, Pat. Cas. 118, omits "not."]

the patentee or not, there can exist no doubt but that he may support a suit in equity to enjoin third persons from infringing the patent, and for an account." In that case Ogle was the patentee, and· his co-plaintiff held the assignment of it for the state of Pennsylvania. The question in that case, however, did not arise, whether the assignee could have sustained that injunction bill in his own name. It is not perceived on what principle a distinction can be made, in regard to parties, between a case at law and in chancery. As this question has not been discussed, at this stage of the proceeding, nothing more is designed than to suggest it for consideration.] [4]

The injunction heretofore granted in this case will be dissolved, on the defendants giving bond and security, within five days, in the sum of fifteen hundred dollars, to account to the plaintiffs, &c. should their right be finally established. Should the defendants fail to give the above security, the injunction will be continued, on the plaintiffs giving bond and security in the like sum of fifteen hundred dollars, &c.

[NOTE: The court subsequently directed a trial by jury, on an issue as to the validity of the patent and renewal. See Brooks v. Jenkins, Case No. 1,953. There was a verdict for defendants, and thereafter a motion was made to set aside the verdict, and for a new trial of the issue, which was denied. Case No. 1,946. Also see opinion given in the progress of the suit, as to whether the assigned patent inured to the benefit of the assignee on renewal. Case No. 1,945. For other cases involving this patent. see note to Bicknell v. Todd, Case No. 1,389.]