POOR (ARCHER v.). See Case No. 509.

---

## Case No. 11,272.

### POOR v. CARLETON et al.

[3 Sumn. 70.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1837.

INJUNCTION — ANSWER DENYING MERITS — AFFIDAVITS CONTRADICTING ANSWER — SPECIAL INJUNCTIONS.

1. In common cases, it is of course to dissolve an injunction, if the answer denies the whole merits; and the plaintiff will not be permitted, upon a motion to dissolve the injunction, to read affidavits in contradiction to the answer. It is otherwise in cases of special injunctions.
[Cited in Orr v. Merrill, Case No. 10,591; Mittleburger v. Stanton. Id. 9,676; Woodworth v. Rogers, Id. 18,018.]
[Cited in Bailey v. Schnitzius, 45 N. J. Eq. 182, 16 Atl. 680.]

2. The continuance or dissolution of a special injunction, after the coming in of the answer, depends upon the sound discretion of the court.
[Cited in Orr v. Littlefield, Case No. 10,590; Clum v. Brewer. Id. 2,909. Quoted in U. S. v. Parrott, Id. 15,998.]
[Cited in Allen v. Hawley, 6 Fla. 142; Pineo v. Heffelfinger, 29 Minn. 184, 12 N. W. 523; Wise v. Lamb, 9 Grat. 301.]

3. The answer must positively deny the material facts of the bill, and the denial must be grounded on personal knowledge, not merely on information and belief, in order to support an application to dissolve a special injunction.
[Cited in Orr v. Badger, Case No. 10,587; Orr v. Littlefield, Id. 10,590. Quoted in U. S. v. Parrott, Id. 15,998. Cited in Same v. Same. Id. 15,999; Nelson v. Robinson. Id. 10,114; Woodworth v. Rogers, Id. 18,018; Platt v. McClure. Id. 11,218; Cole Silver Min. Co. v. Virginia & Gold Hill Water Co., Id. 2,990; Farmer v. Calvert Lithographing, etc., Co., Id. 4,651.]
[Cited in Cooper v. Tappan, 4 Wis. 370; Porter v. Jennings, 89 Cal. 446, 26 Pac. 967; Thompson v. Adams, 2 Ind. 152.]

4. In cases of irreparable mischief, the dissolution of an injunction rests in the sound discretion of the court, whether applied for before or after answer.
[Quoted in U. S. v. Parrott, Case No. 15,998.]
[Cited in Attorney General v. Oakland Co. Bank, Walk. (Mich.) 92.]

5. Affidavits may, after answer, be read by the plaintiff to support the injunction, as well as by the defendant to repel it; and this, although the answer contradicts the substantial facts of the bill, and the affidavits of the plaintiff are in contradiction of the answer. Semble, the practice on this subject is more liberal in America than in England.
[Quoted in U. S. v. Parrott, Case No. 15,998. Cited in Farmer v. Calvert Lithographing, etc., Co., Id. 4,651.]

Bill in equity. This was brought by David Poor, against Richard Carleton and others. It asserted a joint interest in Poor and one Isaac Carleton, of whom the defendants in the present case are the legal representatives, in a certain ship called the Boston; that the ship was built and sailed on joint account; and that it was afterwards seized and detained in Naples, and subsequently sold. "That since the decease of said Carleton, under and by virtue of a treaty duly concluded between the government of the United States and the king of Naples, certain indemnification was and is provided to be paid to the citizens of the United States, whose property had been unlawfully seized and detained or otherwise illegally disposed of, in the manner in said treaty set forth—and that by virtue of said treaty, and under the provisions thereof, your orator and the representatives and heirs of said Carleton, had jointly and equally a large and just claim for indemnification, for the detention, injury and loss of freight, and damages consequent thereon, of said ship and cargo at said Naples aforesaid—and that said defendants, the said Richard Carleton, Isaac Carleton, Charles Carleton, and one Eben Wheaton, of New York, a citizen of the state of New York—without the privity of your orator, and claiming to be the heirs at law of said Isaac Carleton deceased, did make claim and apply to certain commissioners, appointed by said United States, to ascertain and settle the claims of the citizens of the United States, under said treaty, to have allowance and award made to them, the said defendants and said Eben, of the full and whole amounts of damage and injury sustained by the seizure and detention of said vessel and cargo, as aforesaid—and did then and there present to said commissioners, the reg-

---

[1] [Reported by Charles Sumner, Esq.]

ister of said vessel, so made as aforesaid, in the sole name of said Carleton, deceased, as evidence that said vessel was the sole property of him, the said Carleton, whose sole heirs said defendants and said Eben claimed to be, and thereupon such proceedings were had, that said commissioners relying upon said register as evidence of the sole ownership by said Carleton, deceased, of said ship, did allow and award to said defendants and said Eben a large sum of money, for and on account of the seizure and detention of said vessel and cargo, as aforesaid,—and thereupon, pursuant to law in that case made and provided, the secretary of the treasury of said United States did thereafterwards, pursuant to said award, issue to said defendants and said Eben certain certificates, purporting to contain, that said defendants and said Eben were entitled to be paid, and that they and their assigns should be paid out of the moneys received under said treaty, in certain proportions or specified sums, the amount of nine thousand four hundred and thirty dollars and eighty cents. And your orator further shows, that said defendants and said Eben have received said certificates and now hold the same, and that your orator was justly, equitably, and in good conscience entitled to have received and been allowed and awarded one full moiety or half part of the amount so awarded to the defendants and said Eben, and that said certificates, or one moiety thereof in amount, and one moiety of all sums by said defendants and said Eben, or either of them, that have been or shall be received under and by virtue of said award and certificates, has been and will be received by said defendants and said Eben in trust for your orator, as jointly and equally interested with said Carleton, deceased, in said vessel, her freights and earnings."

The bill concluded with a prayer for a writ of injunction to the defendants, restraining them, and each of them, from any and all alienations, transfers, assignments, or other disposition of the said certificates, as also from any collection, the receiving by them, or either of them, or any person in their behalf, of any sums of money, payable under or by virtue of the said certificates.

Upon the coming in of the answer, Sprague, for the defendants, moved to dissolve the injunction which had been granted to restrain the defendants from disposing of the certificates of the stock stated in the bill, and receiving any instalments of money due or payable thereon.

The motion was resisted by Bartlett, for the plaintiff, who filed certain affidavits to establish the utter insolvency of one of the defendants, and the low character and irresponsibility of the other.

After the argument the following opinion was delivered by the court:

STORY, Circuit Justice. The motion to dissolve the injunction granted, in this case, has been made and argued by the counsel for the defendants upon the general ground, that by the rules of courts of equity, after the answers have come in, denying the whole equity of the bill, the defendants are entitled to have the injunction dissolved. On the other hand, the plaintiff insists, that the motion ought not to be granted, upon the ground of irreparable mischief; and in support of the argument he has offered and read certain depositions to establish, that one of the principal defendants is insolvent, and another is of low character, indigent, and irresponsible, and that the third is a minor; and if the certificates of stock stated in the bill are transferred, or payment of the sums due and recoverable on them is received by the defendants, there will, in the event of the suit being sustained, be an irreparable loss of the whole property to the plaintiff. The defendants insist in reply to this statement, that the affidavits are not, in this stage of the cause, admissible, for the purposes alleged; and that if they are, the case made by them of insolvency, and low and irresponsible character, will not justify the court in the extraordinary step of continuing the present injunction, after such a full denial by the answer of the whole equity of the bill.

In the first place, let us consider the ground of the defendants, as to the right to have the injunction dissolved, upon the coming in of the answer. This, it is to be observed, is not the case of the common injunction issued against the defendants for not appearing, or for not answering the bill at the time prescribed by the practice of the court. In such cases, which usually occur in bills to stay proceedings at law, it is of course to dissolve such an injunction, if the answer denies the whole merits; and the plaintiff will not be permitted to read affidavits in contradiction to the answer, upon the motion to dissolve the injunction. This is sufficiently apparent from the statements made by Mr. Eden, in his valuable book on Injunctions. Eden, Inj. 88, 108, 109, 118, 326.

But the present case is one of a special injunction granted to restrain the negotiation of the certificates, and the receipts of payment thereon, until the further order of the court. Now, in such cases, there are two points which seem well established in practice; first, that the dissolution of the injunction is not of course upon the coming in of the answer, denying the merits; and secondly, that, upon the motion to dissolve such an injunction, the plaintiff, under some circumstances, is entitled to read affidavits in contradiction to the answer, not indeed to all points, but to many points. Mr. Eden (page 326) asserts, in broad terms, that "there are few points of practice which have been more discussed, or which are more satisfactorily established, than that by which the right of the plaintiff has been established to read affidavits on the motion to dissolve in contradiction to the defendant's answer." This is,

perhaps, stating the doctrine more broadly than the authorities will justify.

The main distinctions, which seem supported by the authorities, or at least by the weight of authority, are these. In the first place, in cases of special injunctions, if the whole merits are satisfactorily denied by the answer, the injunction is ordinarily dissolved. But there are exceptions to the doctrine, and these, for the most part, are fairly resolvable into the principle of irreparable mischief; such as cases of asserted waste, or of asserted mismanagement in partnership concerns, or of asserted violations of copyrights, or of patent rights. In cases of this sort, the court will look to the whole circumstances, and will continue or dissolve the injunction in the exercise of a sound discretion. This doctrine is, as I think, fully borne out by Lord Hardwicke, in Potter v. Chapman, 1 Amb. 99; 1 Dickens, 146; by Lord Talbot, in Gibbs v. Cole, 3 P. Wms. 255; by Lord Kenyon, in Strathmore v. Bowes, 2 Dickens, 673, 1 Cox, Ch. 263, 2 Brown, Ch. 88; by Lord Eldon, in Norway v. Rowe, 19 Ves. 153, and Peacock v. Peacock, 16 Ves. 49. See, also, Isaac v. Humpage, 1 Ves. Jr. 427, 2 Brown, Ch. 463; Mr. Swanston's note to Smythe v. Smythe, 1 Swanst. 254, note b; Wyatt, Prac. Reg. 236; Hendis. Ch. Prac. 596. A doubt too, in point of law, will furnish a sufficient ground against dissolving an injunction; and was so ruled in Maxwell v. Ward, 11 Price, 17. Indeed, Mr. Chancellor Kent, in Roberts v. Anderson, 2 Johns. Ch. 204, laid down the proposition generally, that the granting and continuing of injunctions must always rest in sound discretion, to be governed by the nature of the case.

It is true, that it was said by Lord Eldon, in Clapham v. White, 8 Ves. 36, 37, that "if the answer denies all the circumstances, upon which the equity is founded, the universal practice, as to the purpose of dissolving or not reviving the injunction, is, to give credit to the answer; and that is carried so far, that, except in the few excepted cases, though five hundred affidavits were filed, not only by the plaintiff, but by many witnesses, not one could be read as to this purpose." This is strong language; but many qualifications must be engrafted on it, as will be manifest from the learned chancellor's own decision in Peacock v. Peacock, 16 Ves. 49, and Norway v. Rowe, 19 Ves. 144, on which I shall presently comment; and, indeed, as his own exceptive words, "in the few excepted cases" clearly import. I confess that I should be sorry to find that any such practice had been established, as that a special injunction should, at all events, be dissolved upon the mere denial by the answer of the whole merits of the bill. There are many cases in which such a practice would be most mischievous; nay, might be the cause of irreparable mischief. The true rule seems to me to be, that the question of dissolution of a special injunction is one which, after the answer comes in, is addressed to the sound discretion of the court. In ordinary circumstances, the dissolution ought to be ordered, because the defendant has primâ facie repelled the whole merits of the claim asserted in the bill. But extraordinary circumstances may exist, which will not only justify, but demand, the continuation of the special injunction. This, upon the principles of courts of equity, which always act so as to prevent irreparable mischiefs and general inconvenience in the administration of public justice, ought to be the practical doctrine; and I am not satisfied that the authorities, properly considered, do establish a contrary doctrine. If they did, I should hesitate to follow them in a mere matter of practice, subversive of the very ends of justice.

Indeed, there are numerous cases, which show the gradual meliorations or changes, often silent and almost unperceived, which have been introduced into the practice of the courts of equity, to obviate the inconveniences which experience has demonstrated, and to adapt the remedial justice of these courts to the new exigencies of society. Thus, for example, thirty years ago, it seems to have been thought by Lord Eldon, that an injunction to restrain the negotiation of a negotiable instrument was an extraordinary interference of the court, and that, upon the coming in of the answer, the case stood exactly as if the case had been upon the common injunction to stay proceedings at law. Berkely v. Brymer, 9 Ves. 355, 356. And the case was then thought distinguishable from that of an injunction granted to stay waste, in which the court would interfere, on account of the danger of irreparable mischief, and continue the injunction to the hearing. But this doctrine has been since completely abandoned; and in Hood v. Aston, 1 Russ. 412, Lord Eldon himself, adverting to the supposed practice, not to interfere in cases of negotiable securities to prevent their negotiation, said: "I do not recollect such a doctrine to have been at any time in my experience the law of this court. It is true, that applications for injunctions of the sort now moved for, have become much more frequent than they were in former days. But the reason is, that in the present state and form of the transactions of mankind, there is an increased necessity for them; a necessity, too, which is not likely to become less." This last doctrine has been in the fullest manner recognised and acted upon by the supreme court of the United States. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738, 845.

But, supposing the doctrine were as comprehensive, as to the dissolving of a special injunction on the coming in of the answer, as the counsel for the defendants has contended: the question occurs, whether it is applicable to all kinds of answers, which deny the whole merits of the bill; or whether it is applicable to such answers only, as

contain statements and denials by defendants, conusant of the facts, and denying the allegations upon their own personal knowledge. It seems to me very clear upon principle, that it can apply to the latter only. The ground of the practice of dissolving an injunction upon a full denial, by the answer, of the material facts is, that in such a case, the court gives entire credit to the answer, upon the common rule in equity, that it is to prevail, if responsive to the charges of the bill, until it is overcome by the testimony of two witnesses, or of one and other stringent corroborative circumstances. But it would certainly be an evasion of the principle of the rule, if we were to say, that a mere naked denial by a party, who had no personal knowledge of any of the material facts, were to receive the same credit, as if the denial were by a party having an actual knowledge of them. In the latter case, the conscience of the defendant is not at all sifted; and his denials must be founded upon his ignorance of the facts, and merely to put them in a train for contestation and due proof, to be made by the other side. This distinction is alluded to, and relied on, by the supreme court in Clarke's Ex'rs v. Van Raindyk, 9 Cranch [13 U. S.] 160, 161. See, also, Hughes v. Garner, 2 Younge & C. Exch. 328. The sole ground, upon which the defendants are entitled to a dissolution of an injunction upon an answer, is, that the answer in effect disproves the case made by the bill, by the very evidence extracted from the conscience of the defendant, upon the interrogation and discovery, sought by the plaintiff, to establish it. But what sort of evidence can that be, which consists in the mere negation of knowledge by the party appealed to? Such negation affords no presumption against the plaintiff's claims; but merely establishes, that the defendant has no personal knowledge to aid it, or to disprove it. It is upon this ground, that it has been held, and in my judgment very properly held, that if the answer does not positively deny the material facts, or the denial is merely from information and belief, it furnishes no ground for an application to dissolve a special injunction. The cases of Roberts v. Anderson, 2 Johns. Ch. 202, 204; Ward v. Van Bokkelen, 1 Paige, 100; Fulton Bank v. New York & S. Canal Co., 1 Paige, 311; Rodgers v. Rodgers, 1 Paige, 426, —are fully in point.

The importance of this distinction is manifest in the present case. Here, the defendants are merely the heirs and representatives of the original party (Isaac Carleton) deceased; and the original transactions detailed in the bill, and under which the plaintiff asserts his title to relief, took place from twenty-eight to thirty years ago; and there is no pretence to say, that any of these defendants have any personal knowledge of these transactions. This is sufficiently apparent from their answers. But by a certificate of the births of the defendants, which is very properly in the case for the present purpose, it appears, that the principal defendants, Richard Carleton and Isaac Carleton, (the other defendant being yet a minor,) were, at the time of the transactions, so young as to demonstrate, that they could have no personal knowledge, Richard being then only nine or ten years old, and Isaac only two or three years old. For the purpose, then, of dissolving the injunction, their answers cannot be treated as competent evidence to repel the allegations of the bill, or to disprove the transactions, on which it is founded.

In regard to the admission of the affidavits, there are other considerations, which require attention. All the affidavits, except that of Josiah Barker, are simply to the point of the insolvency and indigence of the defendant, Isaac Carleton, and of the low character, intemperance and indigence of the defendant, Richard Carleton. They satisfactorily, to my mind, establish the facts, if they are admissible in evidence; and that they are so admissible, I cannot doubt, for they are merely to collateral matters, not touched by, or contradictory to the answers. Taggart v. Hewlett, 1 Mer. 499, and Morgan v. Goode, 3 Mer. 10, and other cases cited by Mr. Swanston in his note to Smythe v. Smythe, 1 Swanst. 254, sufficiently establish this position. See, also, Eden, Inj. 109. Without doubt the defendants are at liberty to repel such affidavits by counter affidavits to the same points; for otherwise they might be compromitted by statements which they would have no opportunity to answer.

In regard to the affidavit of Barker, that is of a very different character, and goes to the proof of the original transactions stated in the bill, and is in direct contradiction to the negative allegations in the answers. It was not filed, when the injunction was obtained; but it has been filed since the answers have come in. Under these circumstances the question arises, whether it is admissible to be read on the present motion. In cases of the common injunction, it has been already stated, that after an answer, denying the whole facts and merits, affidavits cannot be read to contradict the answer, on the motion to dissolve. The language of Lord Eldon, in Clapham v. White, 8 Ves. 35, 36, already cited, is full to this purpose. But in cases of special injunctions, affidavits filed in support of the original injunction may be read, upon the motion to dissolve in contradiction to the answer, in special cases, that is to say, in cases of irreparable mischief, such, for example, as of waste. See Eden, Inj. 326; Peacock v. Peacock, 16 Ves. 49, 50; Smythe v. Smythe, 1 Swanst. 253, and cases cited in note b. Id.; Norway v. Rowe, 19 Ves. 144; Charlton v. Poulter, 19 Ves. 149, note c. But it has been held by Lord Eldon, that even in cases of waste such affidavits are not admissible

to found a motion for an injunction after the answer (none having been previously granted); because, if the affidavits are filed before the answer, the defendant possesses an opportunity of explaining or denying the facts stated in those affidavits; but if the plaintiff reserves his affidavits until after the answer is filed, he does not deal fairly with the defendant, who is entitled, before answer, to be apprised of the points on which the plaintiff rests his case. Smythe v. Smythe, 1 Swanst. 253. I confess myself not so strongly impressed with the force of the reasoning, as the learned judge seems to have been. And it would be very easy to obviate the objection, by allowing the defendant, by his own, as well as other counter affidavits, to repel the statement, which he has not, by his answer, had an opportunity to meet and explain, or deny.

There is another qualification of the doctrine, in cases of irreparable mischief, and that is, that though the original affidavits may be read as to other facts contradicted by the answer, they cannot be read in support of the title of the plaintiff, which is contradicted by the answer. The ground of this exception seems to be, that the court ought not collaterally to decide upon the title. So the doctrine was established in Norway v. Rowe, 19 Ves. 144, 157. Whether that doctrine stands upon a satisfactory foundation, is quite a different question. Upon general principles, I cannot well see, why the court, to prevent irreparable mischief, may not, upon an application to continue an injunction, look to affidavits in affirmance of the plaintiff's title, not so much with a view to establish that title; but to see, whether it has such a probable foundation in the present stage of the cause, as to entitle the plaintiff to be protected against irreparable mischief, if upon the hearing it should turn out to be well founded.

In cases of irreparable mischief—and I think the present case properly falls under that head, or stands upon the same analogy, —it seems to me, that the more fit course for the due administration of public justice is to follow out the suggestions of Lord Eldon himself, in the case of Peacock v. Peacock, 16 Ves. 51. His lordship in that case, which was upon a motion respecting an injunction in a case of partnership, said: "With regard to the point of practice as to reading affidavits, this court has interfered in these cases of partnership, upon principles, not the same, but analogous to those, on which it interposes in the case of waste. In that instance, if the fact can be maintained, the objection is proved with very little effect, that the parties may proceed, vieing with each other by affidavits without end. The court does permit affidavits, taking care to prescribe limits according to the circumstances of such case." This, it appears to me, is the true view of the matter. The admission of the affidavits, whether filed before, or after the answer, whether they are to the title of the plaintiff, or to the acts of the defendant, although they are contradictory to the answer, ought to rest in the sound discretion of the court, according to the circumstances of each particular case, without the court's binding itself by any fixed and unalterable rules, as to the exercise of that discretion. This seems to have been the course which commended itself to the mind of that great equity judge, Mr. Chancellor Kent. See Roberts v. Anderson, 2 Johns. Ch. 202, 205. But see Eastburn v. Kirk, 1 Johns. Ch. 444.

I have looked into the earlier practice of the court of chancery, in order to satisfy myself whether, in all cases of irreparable mischief, the court had positively limited its own discretion under all circumstances, in the manner supposed by the modern authorities. Mr. Dickens, whose great experience in the practice of the court has been thought by Lord Eldon to entitle his opinion to great weight in such matters (Norway v. Rowe, 19 Ves. 154, in reporting the case of Strathmore v. Bowes, 2 Dickens, 673, 1 Cox, Ch. 263, 2 Brown, Ch. 88), has, it is true, given us his view of the practice in the following terms: "On application to continue or dissolve an injunction, either of course, or special, I have always understood it to be the rule, that, though affidavits are not to be read to support the plaintiff's equity, that is, his right to come into the court, when denied by the defendant's answer, yet in injunctions to stay waste, or in the nature of waste, when the waste sworn to, and upon which the injunction is grounded, is denied, the court will admit proof by affidavit in support of the facts." This passage seems certainly corroborative of what has been supposed to be the later general practice. Yet it is difficult, notwithstanding Mr. Dickens's subsequent explanations of the grounds of this practice, to perceive what solid distinction there is, or ought to be, between admitting affidavits as to title and affidavits as to the facts of waste; for each of them are equally in opposition to the answer in relation to the material points of relief. Mr. Dickens at that time also thought, that affidavits by the defendant, in support of his answer, were not admissible. But Lord Eldon considers the present practice to be, or at least that it ought to be, upon principle, otherwise. However, Lord Eldon does not understand Mr. Dickens to mean to assert, what the passage above-cited may seem, at first sight, to import; for he says, in Norway v. Rowe, 19 Ves. 154: "Mr. Dickens, however, did not mean, that if there is, by the answer, a total denial of the plaintiff's title to stay waste, the plaintiff could not by affidavit assert his title, contradicting the answer in that respect;" a concession, if well founded, which removes the statement of Mr. Dickens out of the present case. See, also, Eden, Inj. p. 328.

The truth seems to be, that in cases of this

sort, the practice has been shifting from time to time, to meet the new exigencies of society and the pressure of peculiar circumstances; and the court has never suffered itself to be entrapped by its own rules, so as to interfere with the purposes of substantial justice. The practice in America has, I believe, on this subject, become more liberal, than it is in England; and if it were necessary, I should not hesitate to admit affidavits to contradict the answer, for the purpose of continuing or even of granting a special injunction, where I perceived, that, without it, irreparable mischiefs would arise. In the present case, there are circumstances, which might free me from the necessity of asserting so broad a doctrine. But I wish rather to dispose of the case upon the general ground, that the granting and dissolving injunctions in cases of irreparable mischief, rest in the sound discretion of the court, whether applied for before or after answer; and that affidavits may after answer be read by the plaintiff to support the injunction, as well as by the defendant to repel it, although the answer contradicts the substantial facts of the bill, and the affidavits of the plaintiff are in contradiction of the answer.

The motion to dissolve the injunction is accordingly refused.