### Case No. 4,651.

FARMER v. CALVERT LITHOGRAPHING, ETC., CO.

[1 Flip. 228; 5 Am. Law T. Rep. 168; 5 Chi. Leg. News, 1; 7 Am. Law Rev. 365; 4 Leg. Gaz. 333.][1]

Circuit Court, E. D. Michigan. April 8, 1872.

G. V. N. Lothrop and Robinson & Brooks, for complainant.

A. Russell, for defendant.

LONGYEAR, District Judge. The preliminary injunction in this case having been issued upon the bill of complaint, by consent, the court, in the absence of any pretense of fraud or mistake in the obtaining or giving of the consent, will not, upon the motion to

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 7 Am. Law Rev. 365, contains only a partial report.]

dissolve, consider any questions arising upon the bill alone, or the complainant's right to bring the suit; the parties, the subject matter, and the writ, appearing as they do to be within the jurisdiction of the court. 16 Stat. 215, § 106. The motion seems in fact to be based upon this idea, it being founded expressly upon the answer and accompanying affidavit. The complainant may, as was argued, have inserted in his bill prayers for specific relief to which he is not entitled in a court of equity. But with that we have nothing to do here, although it is a proper matter for consideration upon the final hearing. The only question now is, whether the injunction shall be continued until final hearing and decree. The right of the complainant to have the injunction issue upon the case as made by his bill, having been, as we have seen, conceded, the motion to dissolve must be considered solely upon the questions raised by the answer.

On the hearing of the motion, complainant's counsel offered to read affidavits for the purpose of rebutting certain averments of the answer as to complainant's title. Defendant's counsel objected. The court allowed the affidavits to be read subject to the objection, to be finally received or rejected as the court should decide.

The question of the reception of affidavits on motion for, or to dissolve, an injunction in copyright cases, for the purpose of rebutting averments in the answer as to complainant's title, has undergone much discussion in the courts. In England, it seems to be well settled that such affidavits will not be received, the complainant being left to depend upon the affidavits filed with his bill so far as the question of title is concerned. Norway v. Rowe, 19 Ves. 144, 151, 156, and cases there cited; Platt v. Button, Id. 447. In the United States, although a practice seems to have grown up in some localities to receive such affidavits, yet whenever the question has been raised and adjudicated the decisions of the courts with scarcely an exception, seem to have been quite to the contrary, and in conformity with the English practice.

Counsel referred the court to numerous authorities on the question of allowing complainant to read affidavits in rebuttal of the answer in injunction cases generally (see cases cited in Hil. Inj. at page 107), but they failed to refer the court to any authority or adjudicated case upon this particular question of allowing such affidavits to be read after answer, in support of complainant's title, with perhaps the single exception of the case of Poor v. Carleton [Case No. 11,-272], which upon the face of it appears to be exceptional. With the limited time I have had to spare amidst the discharge of other duties, I have been able to find but few decisions in this country upon the point.

Justice Grier, in 1850, in a patent case (Parker v. Sears [Case No. 10,748]), held that the United States circuit courts were bound to follow the settled rules of practice of the English courts of equity in this respect, (there being no written rule of court to the contrary,) and refused to allow such affidavits to be read. In 1868, in another case (Goodyear v. Mullee [Id. 5,579]), the same learned judge allowed affidavits by way of rebuttal to be read, but they in no manner related to the question of title.

In the case of U. S. v. Parrott [Case No. 15,998], the United States circuit court for California, McAllister, J., after an able review and full consideration of the authorities, English and American, including the case of Poor v. Carleton [supra], held that affidavits as to the title after answer could not be read on a motion for injunction to stay waste.

In Brooks v. Bicknell [Case No. 1,944], Justice McLean quotes approvingly the language of the court in Morphett v. Jones, 19 Ves. 350, where it is said: "There are many cases of injunction where you may reply to the answer by affidavits, not on the question of title, but on mere facts, as in the instance of waste. On such questions of fact, though not on the title, affidavits in reply to the answer may be read." The learned judge then quotes from 1 Smith, Ch. Pr., where it is said: "If the plaintiff, instead of applying for the injunction upon affidavit, waits until the defendant has answered, he must rest his case upon the disclosures made by the answer, and he is not entitled, either for the purpose of obtaining or continuing an injunction, to read affidavits in support of his motion in opposition to the answer," and says: "But cases of waste, or of mischief analogous to waste, are an exception to this rule where the affidavits do not refer to title." That was a patent case, and, as the affidavits did not refer to title, they were allowed to be read.

The current of authority seems to be all one way, and opposed to the reception of the affidavits. So far, therefore, as the affidavits offered refer to complainant's title, they must be rejected. They are received, however, and will be used so far as they bear upon the question of infringement. The motion to dissolve the injunction must, therefore, be decided upon the answer and accompanying affidavit, so far as questions relating to complainant's title are concerned.

There is a demurrer, by way of answer, to the bill as an injunction bill, which must be first disposed of. It is claimed that complainant is not entitled to an injunction for the reason that it does not appear by the bill that he has settled his right at law, and obtained a verdict of a jury in his favor touching the alleged infringement. Such, no doubt, was formerly the law, and now, in some cases, the court will, no doubt, require that to be done. But it is now well settled that both the right and the infringement may be set up and adjudicated in a court of

equity without having been first determined at law. Phil. Pat. cc. 20–24; Hil. Inj. 391, 392; 2 Story, Eq. Jur. pp. 246–248; Stevens v. Gladding, 17 How. [58 U. S.] 447; Motte v. Bennett [Case No. 9,884]; Ogle v. Ege [Id. 10,462]. Suffice it to say, that under the authorities, and aside from the fact that the injunction was issued by consent, the present case is one in which the court will not send the parties to a court of law before proceeding to adjudicate upon the plaintiff's right to an injunction.

Another ground of demurrer is that the bill does not waive the forfeiture of the printed copies of defendant's map, and the penalty of one dollar for each copy, as provided by statute in such cases, but on the contrary prays that such forfeiture and penalty may be inflicted in addition to the relief by injunction and an accounting for profits. The proposition here is, that equity will not grant its assistance by way of injunction and an accounting as to the profits, unless complainant, as a condition of his prayer for such assistance, shall expressly waive the forfeitures and penalty. No reason, based upon principle, is advanced in support of the proposition, neither can I see that any exists. It is claimed, however, that the proposition is supported by authority, and several English cases are cited. Some of the cases by their looseness of expression and generality of statement would seem to do so, especially the case of Colburn v. Simms, 2 Hare, 554. But it will be found upon scrutiny that the cases cited are all based upon the decision in the leading case upon this question of Brand v. Cumming, cited in 22 Vin. Abr. 315, and that the rule deducible from them all goes to the following extent, and no further, viz.: That equity will not compel a discovery by a defendant when such discovery would subject him to forfeitures or penalties, unless such forfeitures or penalties are expressly waived by the bill; provided, the defendant takes the objection by demurrer to such discovery, or declines in his answer to make such discovery on that ground. Brand v. Cumming, cited in 22 Vin. Abr. 315; Williams v. Farrington, 3 Brown, Ch. 38; Mason v. Murray [2 Dick. 536], cited in last case, at page 40.

The defendant cannot submit to answer as to the discovery prayed, and at the same time insist upon the objection. In this case he has so submitted to answer. The objection, therefore, comes too late.

The further objection that the statutory forfeitures and penalty can be enforced only at law does not concern the present motion, although it will be a proper matter for consideration in another stage of the case.

This brings us directly to the merits of the question upon the bill and answer. The question is, as has been already remarked, does the answer so far disprove the case made by the bill as to entitle the defendant to a dissolution of the injunction?

1st—As to complainant's title. This is set up in the bill with great particularity, and an undisturbed use and enjoyment of the same for a long period of time by complainant and those under whom he claims, is alleged. The answer in the first paragraph ignores complainant's proprietorship of the copyrights of the twelve maps, as set up in the bill, and proceeds as follows: "But defendant says, as hereinafter particularly alleged, that complainant and his transferrers were never of right entitled to any such copyrights, and that the same, if existing, are null and void." What is referred to "as hereinafter particularly alleged," is found in paragraphs 50 and 51 of the answer, and consists in allegations wholly on information and belief, to the effect that complainant's maps were not themselves original, but were copies or piracies of the work and labors of other persons. The only other allegation or denial contained in the answer affecting complainant's title or right is the 16th paragraph, and is wholly on information and belief.

It is seen, therefore, that all the allegations and denials of the answer in any manner affecting complainant's title or right are founded on information and belief merely; and none of them are supported by affidavits of persons having any knowledge of the facts thus alleged. Denials and allegations merely on information and belief are not sufficient to entitle the defendant to a dissolution of an injunction. They must be upon personal knowledge or supported by the affidavit of some person or persons having personal knowledge. Poor v. Carleton [Case No. 11,272]; Nelson v. Robinson [Id. 10,114]; U. S. v. Samperyac [Id. 16,216a]; Conover v. Mers [Id. 3,123]. For the purposes of this motion, therefore, the title of complainant must stand as set up in his bill.

2d—As to infringement. The bill sets up copyrights of twelve different maps, and contains a general charge of infringement of them all, and especially of the first six; and also special charges of infringement as to certain of the maps, particularly the first, second and fourth. The map first set up, and with which we have principally to do so far as this motion is concerned, is a map of Wisconsin, embracing parts of Illinois, Michigan and Minnesota, alleged to have been made and published in 1865, and to have been entered for copyright May 11th of the same year. Of this map, it is alleged in an amendment to the bill, editions were published and dated in the years 1866 and 1867. Copies of the said alleged edition of 1867, and of two others of complainant's maps, and of the defendant's map, alleged to be an infringement of the same, are filed with the bill as exhibits.

The answer, in general terms, denies the general charge, and also the special charges of infringement, but admits the taking of the boundaries of all the towns in Wisconsin, containing more than thirty-six square miles, from the complainant's map of 1867.

In addition to what is stated above, the bill contains voluminous references to instances of similarity and identity, gathered from examinations and comparisons, such as errors in complainant's maps, peculiarities of spelling and location of names, etc., as evidence of infringement; and the answer contains equally voluminous statements by way of explanation and avoidance of the same. These are merely matters of evidence. They were as fully before the court by means of the maps made exhibits as they could be by any statements in the bill, and, being made matters of evidence, the statement of them in the bill was not only unnecessary, but in violation of a well settled rule of equity pleading. See Story, Eq. Pl. §§ 28, 252, note 1 to section 265a, and section 266. When it is necessary to bring such matters before the court for the purpose of moving for, or of sustaining an injunction, or it is deemed important to call the attention of the court to them in some authentic form, it should be done by affidavit and not by allegations in the bill.

I allude to this subject in this connection, not so much because it is to materially affect the question now under consideration (the defendant having submitted to answer), but to call attention to the pernicious and growing practice of stuffing and overloading pleadings in equity with superfluous allegations and redundant and unnecessary statements; and also, as it is expressed in one of the ordinances of the English court of chancery, "to the end, the ancient brevity and succinctness of bills and other pleadings may be restored and observed."

In order to avoid the effect of the admission in the answer of the taking by defendant in the preparation of its map of certain township boundaries from complainant's map of 1867, it is contended on behalf of defendant that the said map of 1867 is not covered by the copyright of the map of 1865, as being a new edition thereof, because: 1—The copyright laws of the United States contemplate and cover new editions of books only, and not of maps. Section 4 of the supplemental act of March 3, 1865 (13 Stat. 540), is referred to in support of this proposition. But that section is definitive merely of the word "book" as used in the act, and in no manner affects maps or any subject of copyright other than books, affirmatively or negatively. It will be seen, however, by an examination of section 5 of the act of February 3, 1831 (4 Stat. 437), in force at the time, and section 97 of the act of July 8, 1870 (16 Stat. 214), now in force, that subsequent editions of maps, as well as books, were then, and continue to be, clearly contemplated. 2—It is also contended that the map of 1867 is not entitled to the protection of the copyright of the map of 1865 as a new edition, because it differs from the latter materially in respect to its title, and also in numerous additions and

alterations. The title of the map of 1865, as set up in the bill, and that of the map of 1867, as printed upon its face, are identical, so far as they are descriptive of the map. Appended to the descriptive statement are the following words and figures: "Published by S. Farmer & Co., Detroit and Milwaukee, 1865," the figures "1865" being changed to "1867" on the map of that date, and this is the only difference alleged or that can be found in relation to the title. The clause quoted, and in which the difference of date occurs, is no part of the description of the map, and is entirely unnecessary to an understanding of that to which the title relates, and I think it constitutes no part of the title. It could not truthfully constitute a part of the title for the purpose of copyright, because by express enactment the title was, as it still is, required to be entered and recorded before publication. 4 Stat. 437, § 4; 16 Stat. 213, § 90. All that is required in connection with the fact of publication is, the depositing of a copy or copies within certain specified times after publication. Id. There is no time prescribed within which actual publication shall commence. That is left entirely to the option of the proprietor. The map of 1867 has, moreover, printed upon its face in a prominent position, and in plain type, the notice of entry for copyright required by law, showing clearly and plainly that the date of such entry was in the year 1865. I think this sufficiently indicated that the map of 1867 was intended for the map, or an edition of the map, which had been so entered as specified in the notice, so that the date at the bottom of the title, even if it could be considered a part of the title, would in the light of the notice, indicate to any person of ordinary comprehension a map, or an edition of a map which had been copyrighted in 1865, and published in 1867. This case is very different from the cases cited by defendant's counsel (Baker v. Taylor [Case No. 782]; King v. Force [Id. 7,791]), in which there had been an omission or erroneous statement of the year in which the copyright was obtained, in the notice; also from the English case cited by him (Mathieson v. Harrod, Eng. Ch. 1868 [7 L. R. Eq. 270], 1 Chi. Leg. News, 99), which arose under an English statute very different from ours, requiring the date of the first publication to be given. Those cases, therefore, have no application. As to the alterations and additions alleged in the answer to have been made to the map of 1865 in the map of 1867, there are none specified except as to the railroad system of Wisconsin, and that is not alleged except inferentially, at least, by reference to the map itself. The edition of 1865, not having been made an exhibit, and not being before me, I am unable to determine whether any and what alterations and additions were made, and, of course, whether such alterations and additions are of

such a character in kind and extent as to make the map of 1867 an original map, and so deprive it of the protection of the copyright of the map of 1865. This can be de-determined only after the proofs are all in. For the purposes of this motion, the map of 1867 must be deemed an edition of that of 1865, as alleged in the bill, and therefore protected by the copyright of the latter. 3— It is also contended that the notice of copyright is bad, because it describes the court in which the entry was made as "the district court for the eastern district of Michigan," instead of "the district court of the United States for," etc., as is the true title of the court. Suffice it to say that the statute prescribes the form of the notice (4 Stat. 437, § 5), and the notice in this case is in the exact form so prescribed. It must, therefore, be deemed sufficient.

The courts, in the interest of learning and science, have at all times and in all countries recognized the right of subsequent authors, compilers, and publishers to use the works of others to a certain extent, but the great difficulty has always been, and always must be, to determine where such use ceases to be legitimate, and becomes an invasion of the rights of others. The difficulty is greatest in cases of maps and the like, in which there is not, and cannot be, any originality in the facts or materials of which they are composed, and which facts and materials are equally open to all. The following rule laid down by Mr. Copinger (Cop. Copyr. 91) comes as near to defining this right as anything I have been able to find or can invent. He says: "The rule appears not to be settled that the compiler of a work in which absolute originality is of necessity excluded, is entitled, without exposing himself to a charge of piracy, to make use of preceding works upon the subject, where he bestows such mental labor upon what he has taken, and subjects it to such revision and correction as to produce an original result; provided, that he does not deny the use made of such preceding works, and the alterations are not merely colorable."

To apply this rule to the present case: What mental labor did the defendant bestow upon those portions of the complainant's map, admitted to have been taken in the preparation of its own, viz.: the boundaries of the larger townships of Wisconsin? None whatever beyond the mere mechanical operation of reducing them from the larger scale of complainant's to the smaller scale of defendant's map. Neither does it appear that there was any revision whatever to ascertain if there were errors which needed correction, or for any other purpose. There is, in fact, nothing whatever to bring the case within the rule. So far as those boundaries are concerned, it is clearly a case of naked piracy.

But it is contended that boundaries of townships are not a legitimate subject of copyright—that they are fixed and defined by statute law, and that the marking of them down upon paper is but a transcription in another form of the legal enactment. What is claimed in this regard is true in regard to all original materials from which maps are made, and that is that none of them are subjects of copyright—they are open to all. But no one has the right to avail himself of the enterprise, labor and expense of another in the ascertainment of those materials, and the combining and arrangement of them, and the representing them on paper. The defendant, no doubt, had the right to go to the common source of information, and having ascertained those boundaries, to have drawn them upon its map, notwithstanding that in this respect it would have been precisely like complainant's map, (which of course it would have been if they were both correct). But he had no right to avail himself of this very labor on the part of complainant in order to avoid it himself. As appears by complainant's affidavit, these boundaries were fixed by the boards of supervisors of the respective counties, and not by legislative enactment, thus showing that the labor must have been much greater than it would have been if such boundaries could have been ascertained from the statutes of the state.

It is said the court looks at value more than quantity in these cases, and that in this case the value of what was taken is so small in comparison with the whole that the court will disregard it. The rule of law is correctly stated; but how is it as to the fact? The townships of which the boundaries are admitted to have been taken comprise nearly, if not quite, one-half of the state of Wisconsin. Most of the smaller townships of the state, those comprising no more than thirty-six square miles, are rectangular —nearly all of them square—in form, and therefore easily projected on a map, while the townships in question are nearly all irregular in form, and therefore more difficult to represent correctly on paper, requiring more, and a higher degree of mental labor and skill in the operation. Neither can it be said that this portion of the map is of less value because it represented the unsettled, or but sparsely settled portions of the state. There might be some force in the suggestion if the region in question were a desert waste, uninhabited and uninhabitable, and valueless and unsought after for any purpose whatever. But here the facts are directly the opposite. These lands are among the most valuable in the state for agricultural purposes, for timber, and to some extent for minerals; are largely sought after for actual settlement and for speculation, and are rapidly filling up with a fixed and permanent population. It is to maps that persons desiring to settle or invest go to a very large extent for information as to locality, topography, markets, railroads, etc., and it certainly cannot be said that the part of a map

representing this portion of the state is insignificant or of little value; nor, in my opinion, is it of any less value than that part of the map representing the settled portions of the state.

From these views it results that the injunction ought to be continued to the hearing without the necessity of entering into a particular consideration of other evidences of piracy gathered from a comparison of defendant's map with those of complainant, which were laid before me at the hearing. It must not be inferred from this, however, that that branch of the case has not received full consideration at my hands. Suffice it to say, that upon a careful and critical examination and comparison, I find evidence—some of which it has been attempted in the answer to explain and avoid, with what degree of success it is unnecessary to consider here, and all of which is open to such explanation as the defendant may hereafter offer—which strongly confirms me in the belief that defendant's piracy of complainant's copyrights extends far beyond what is admitted in the answer, thus placing it beyond all doubt, in my mind, that justice requires that the injunction should be continued to the hearing.

The motion to dissolve is denied.