FORD v. TAYLOR et al.

(Circuit Court, D. Nevada.  September 5, 1905.)

No. 799.

**1. PRELIMINARY INJUNCTION—MOTION FOR DISSOLUTION.**

There is no inflexible rule under the authorities as to the measure of new evidence required to entitle a defendant to the dissolution of a preliminary injunction, but each case must be decided on its own peculiar facts.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 387.]

**2. SAME—EFFECT OF ANSWER AS DENIAL.**

Keeping in view that the purpose of a preliminary injunction is to preserve rights claimed until their adjudication, such an injunction ought not to be dissolved on an answer which is evasive as to any of the material allegations of the bill; nor does a full denial of the equities of the bill entitle the defendant to a dissolution as a matter of right, but the matter is within the sound discretion of the court.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, §§ 376–383.]

**3. SAME—PROOFS.**

To warrant a court in continuing a preliminary injunction in a suit for specific performance of a contract, it is not necessary that it should be clear that complainant will succeed at the hearing; but it is sufficient if there is reasonable ground for supposing that relief may be given.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 358.]

**4. EVIDENCE—WEIGHT—NUMBER OF WITNESSES.**

A preponderance in number of witnesses does not establish a preponderance in weight of evidence, especially where the testimony is ex parte by affidavits.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2450.]

In Equity.  On motion to dissolve injunction.

Key Pittman and J. K. Chambers, for complainant.

Campbell, Metson & Campbell and James H. Budd, for respondents.

HAWLEY, District Judge (orally).  This suit was brought November 4, 1904, in the state court, to enforce the specific performance of an oral contract or agreement, alleged in the complaint to have been made and entered into between the complainant and defendant Taylor with reference to the acquirement of mining ground and mining claims in what is now known as the Goldfield mining district, "for the mutual interest and benefit of each," and for an accounting; the agreement, in

substance, being that Ford on his part should furnish Taylor with a horse or mule (and feed for the same) to drive in a cart, and that Taylor should locate mining claims, and each should be equally interested therein. There is no need of repeating the specific allegations of the several pleadings. The Jumbo Mining Company is made a party, because the mining claims in which complainant claims to own an undivided half interest were conveyed by Taylor and others to that corporation. Taylor owns 294,000 shares of stock in said corporation.

The injunction herein was issued by the state court before the removal of the suit to this court. It is very broad in its terms, and enjoins Taylor from in any manner disposing of his stock, and the Jumbo corporation is enjoined from paying or delivering to him any money or assets on said stock, or conveying to any person whomsoever any of said shares of stock standing in Taylor's name on the books of the corporation. The suit was removed to this court February 23, 1905, and upon March 30, 1905, a motion to dissolve the appointment of a receiver was granted. Ford v. Taylor (C. C.) 137 Fed. 149. At that time complainant by leave of court filed an amended bill. On June 24th defendant Taylor filed an answer to the amended bill of complaint. Upon the hearing of the motion to dissolve the injunction, complainant's counsel claimed that he had never been served with the amended answer, and asked time to prepare and file counter affidavits, which was granted; also to file a replication to the amended answer, which was allowed. The question as to what disposition should be made of this motion is by no means absolutely free from doubt. The issuance of the injunction in such broad terms as to keep intact the 294,000 shares, in order to secure the interest (one-half) which complainant claims therein, might be deemed somewhat excessive. Its continuance, in the light of the facts set out in the amended bill of complaint, which materially reduces the number of mining claims in which complainant asserted an interest in his original bill, might, perhaps, be satisfied with less security. These are matters, however, which would only reach the propriety of modifying the extent of the injunction, which is not asked for, and it may be that an attempt in that direction would only lead to greater difficulties.

The new matter introduced by the amended bill of complaint relates more to the extent than to the right of the recovery by complainant. In this respect it differs somewhat from the question often presented in patent cases, where the principle involved at the time the injunction was granted has become inapplicable by reason of the subsequent introduction of new matter, and motions for dissolution of the injunction made on the ground that, if such new matter had been brought to the attention of the court at the time of the issuance of the injunction, it would not have been granted. In such cases the courts have expressed differences of opinion as to what rules should be applied—one class holding that to justify the denial of an injunction the new evidence must be of such a conclusive character as to place the question at issue beyond all reasonable doubt, and that every doubt must be resolved against the defendant; another class contending that such a

measure of proof cannot always be satisfactorily obtained, that it is harsh, severe, and unreasonable, and that the correct rule is that complainant, in order to obtain an injunction or secure its continuance, must show a clear right in support of the writ, and that any defense which puts the case in doubt should be deemed sufficient to defeat the application. In Norton v. Eagle Automatic Can Co. (C. C.) 61 Fed. 293, 294, et seq., I had occasion to discuss these rules, and, among other things having some bearing on the questions involved herein, said:

"While the beaten path of precedent is undoubtedly the safest road for nisi prius courts to follow, a blind adherence thereto, without considering the changed facts, would often lead to great injustice, which it should be the aim of every court to avoid. A safe, just, and equitable rule would be to require the defendant in such cases to produce new evidence of such a clear and positive character as to justify a well-founded belief that upon the final hearing the full proofs might be such as to warrant a different construction of complainant's patent."

The result in that case was an order denying the motion to dismiss the injunction, unless the defendant gave bond in the sum stated, in which event the injunction should be dissolved. The bond was given. The authorities on these points are very numerous and not entirely uniform. No inflexible rule can be announced applicable to all cases; each case being decided upon the peculiar facts therein presented.

Upon the showing made, should the injunction issued by the state court be dissolved? This question will be considered without reference to the outside and irrelevant matters which were incidentally brought out by the respective parties at the hearing. An injunction pendente lite is a provisional remedy, granted before the hearing upon the merits, for the purpose of preventing the doing of any act whereby the rights in controversy may be materially damaged, injured, or endangered before the final decree, and its purpose is to preserve the subject of controversy until an opportunity is afforded for a full and deliberate investigation. The rights of the defendant are protected by an injunction bond, and the courts, on a motion to dissolve the injunction, should consider the question whether, if it be granted, the complainant would have any protection at all.

The principal contention in favor of the motion to dissolve the injunction is based upon the ground that the answer denies all the equities of complainant's bill. The answer does affirmatively deny nearly all the equities of the bill, but it does not specifically deny the making of a contract relative to the subject-matter alleged in the complaint. Defendant emphatically denies the contract as alleged in the bill, but—

"In this connection the respondent and defendant states and avers that when he made the proposition to said complainant, contained in paragraph 1 hereof, the complainant did not accept the said proposition or offer of the respondent and defendant, but told the respondent to see one Claud Ford, a son of the complainant; that thereupon this respondent did see Claud Ford, and said Claud Ford furnished to this respondent a horse to make the contemplated trip to the aforesaid Grandpa mining district, on the understanding and agreement between them that this respondent would on said trip locate an undi-

vided one-half interest in the name of said Claud Ford in some one mining claim in said district for said Claud and his father; and there was no other and further agreement made by the defendant and respondent with either the complainant herein or his said son, Claud Ford."

Again, further answering, he—

"Admits that on one of the trips taken by him to the Grandpa mining district he used a gray horse, owned either by the complainant or his son, but that said trip was the trip beginning May 23, 1903, and ending on or about May 28, 1903, and that between the 22d day of May, 1903, and the 15th day of June, 1903, he made no other trips with any horse or animal owned by or controlled by the complainant herein; nor did he ever make any other trip under any agreement or understanding by and between himself and the complainant or complainant's son."

And he further avers that he notified Claud of the location, and demanded that he should pay his portion of the assessment work, and upon his refusal so to do the claim was abandoned. These averments are evasive and deceptive. The defendant does not give the name of the one claim to which he refers, or any description of it that would enable any one to ascertain where it was situated, or whether or not it had ever been abandoned or relocated, or whether it was or was not one of the claims conveyed by Taylor to the Jumbo Mining Company. The rule is that, if the answer is unsatisfactory as to the material equity of complainant's case, it is proper to continue the injunction until the hearing. An injunction ought not to be dissolved upon an answer which is evasive as to any of the material allegations of the bill. Where it is apparent from the answer that there are still questions of doubt on which additional light is requisite to satisfy the court before deciding the rights of the parties, a dissolution of the injunction should not be granted; or if a reasonable doubt exists as to whether the equity of the bill is sufficiently negatived by the answer to warrant a dissolution it is not error for the court to refuse to dissolve the injunction, and to order it to stand over that proofs may be taken. 2 High, Inj. § 1510, and authorities there cited.

But, treating the answer as a complete denial of the averments of complainant's bill, it does not necessarily follow that the injunction should be dissolved, for there are many exceptions to the general rule above stated, that are as well settled as the rule itself. It has often been held that, where the dissolution of an injunction would be practically a denial of the relief to which the complainant might show himself entitled on final hearing, although the equity of the bill may be fully answered, the court will continue the injunction to the final hearing, if the dissolution would work a greater injury than the continuance of the process. As is said in 2 High, Inj. § 1508:

"In the first place, it is to be constantly borne in mind that the dissolution, like the granting of interlocutory injunctions, is largely a matter of judicial discretion, to be determined by the nature of the particular case under consideration. A dissolution, therefore, does not follow necessarily and of course upon the coming in of the answer denying the material allegations of the bill upon which the injunction issued, and the court may, in the exercise of a

sound judicial discretion, refuse a dissolution and continue the injunction to the hearing, where the circumstances of the case seem to demand this course."

See, also, 1 Beach, Inj. §§ 286, 307, 308; Poor v. Carleton, 3 Sumn. 70, Fed. Cas. No. 11,272; U. S. v. Parrott, 27 Fed. Cas. 435; Chain Belt Co. v. Von Spreckelsen (Wis.) 94 N. W. 78, 81, and authorities there cited; Chicago K. & S. Ry. Co. v. Kalamazoo Circuit Judge (Mich.) 101 N. W. 525; Huron Waterworks v. City of Huron, 3 S. D. 610, 617, 54 N. W. 652; Id., 4 S. D. 102, 55 N. W. 759, and authorities there cited.

The next proposition advanced in favor of the motion is the principle announced in Ford v. Taylor, supra, that:

"Where the complainant does not waive an answer to the bill under oath, an answer under oath, which distinctly denies the material allegations of the complaint, not only makes an issue, but proves it to the extent that it will require the evidence of two witnesses, or of one witness and other circumstances equivalent to a second, to overthrow the answer."

The facts in that case were not identical with the facts presented upon this motion. There the showing made by complainant was not "of such a character as to overthrow the evidence of the answer." Here there are the affidavits of more than two witnesses tending to disprove the allegations. The principles announced in Ford v. Taylor are not, therefore, conclusive upon this motion.

The next contention of counsel for defendant is that the great weight of the evidence, as shown by the affidavits, is in direct opposition to the averments in complainant's bill. It is argued that:

"The respondent has by a cloud of responsible witnesses disproved the allegations of the bill. * * * These witnesses establish that there is not any reasonable or other probability of complainant establishing his case, and hence the injunction should be dissolved. * * * The evidence establishes beyond all doubt that not a single claim that was purchased by the Jumbo corporation, nor on which was based the issue of stock to respondent was located while any animal of complainant was in respondent's possession; and hence, as to the stock, the injunction should be dissolved."

There are a greater number of affidavits on behalf of defendant than of complainant; but cases, even when tried upon the merits, are not always to be decided by the number of witnesses that may be offered. The preponderance of the evidence does not depend upon the number of witnesses. It does depend upon the weight and credibility that should be given to the respective witnesses. "Any number of witnesses may be of equal credibility and possess equal information, and still differ greatly in the amount or weight of their evidence. The authorities generally affirm that the number of witnesses are not to be counted by the jury or court trying the case in order to determine upon which side is the preponderance; but the evidence given by them is to be weighed, and the preponderance thereof does not depend on the greater number of the witnesses in the particular case." Indianapolis St. Ry. Co. v. Johnson (Ind. Sup.) 72 N. E. 571, 574.

This rule is specially applicable to the case of ex parte affidavits, where there is a direct conflict as to time, facts, and circumstances, material and relevant to the issues presented. And especially is it true in this case, where more or less of the alleged facts are stated on both sides upon hearsay, information, or belief. It is evident that the weight and credibility of the respective witnesses whose affidavits have been presented can be much better determined at the trial, where the right to test the truth or falsity of their statements by cross-examination can be fully exercised. The merits of this case cannot safely be decided upon this motion. It may be conceded that this court, from all the facts and circumstances, cannot satisfactorily determine whether complainant will eventually be able to prove sufficient facts to enable him to succeed upon the final trial; but the law does not always require such a plain showing to be made. As was said by the Chancellor in Huffman v. Hummer, 17 N. J. Eq. 263, 268:

"The use of the injunction in the present case is merely ancillary to the main design of the bill, to enforce a specific performance of a contract. Its purpose is to prevent the defendant from embarrassing the complainant, or defeating the object of the bill, by dealing with the property during the pendency of a suit. In many cases the court will interfere and preserve property in statu quo during the pendency of the suit in which the rights to it are to be decided, and that without expressing, and often without having the means of forming, any opinion as to such rights. * * * It is not necessary, therefore, in order to continue the injunction, that it should be clear that the complainant will succeed at the hearing. It is sufficient if there is [reasonable] ground for supposing that relief may be given."

See, also, Shea v. Nilima, 133 Fed. 209, 216, 66 C. C. A. 263. The motion to dissolve the injunction is denied.